IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ACUITY BRANDS LIGHTING, INC.

    *Plaintiff,*

    v.

TIMOTHY SMITRESKI;
DIVERSIFIED NJ, INC.;
12C SYNERGY, INC.

    *Defendants.*

No. 1:21-cv-01586-SB

---

Andrew Lynch Cole, Michael E. Fitzpatrick, COLE SCHOTZ P.C., Wilmington, Delaware; Ivan R. Novich, Tyler A. Sims, LITTLER MENDELSON P.C., Newark, New Jersey.

    *Counsel for Plaintiff.*

Margaret M. DiBianca, CLARK HILL PLC, Wilmington, Delaware.

    *Counsel for Defendant Timothy Smitreski.*

David Phillip Primack, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Wilmington, Delaware; Eric J. Schreiner, Lorena E. Ahumada, KLEINBARD LLC, Philadelphia, Pennsylvania.

    *Counsel for Defendants Diversified NJ, Inc. & 12C Synergy, Inc.*

---

**MEMORANDUM OPINION**

August 1, 2022

BIBAS, *Circuit Judge*, sitting by designation.

When a competitor steals a company's employee, that company may be able to sue. But bad behavior does not always lead to liability. The company must show that it was actually harmed by its competitor's actions. And interfering with an employment contract does not make the competitor a party to it. Applying those rules here, I must dismiss two claims brought by a company against its competitor.

Timothy Smitreski was a sales manager for Acuity Brands Lighting. Compl. D.I. 1-1 ¶ 25. As part of his job, he entertained Acuity's customers. *Id.* ¶ 33. So Acuity had him sign a confidentiality and non-compete agreement to protect those relationships. *Id.* ¶¶ 44–53. Smitreski agreed not to use Acuity's customer information if he left his job, not to speak to customers for two years, and not to work for a competitor for one year. *Id.* ¶¶ 47–49; D.I. 1-1, ex. C, § 2(C), (E), (F).

Last year, Smitreski quit working for Acuity. Compl. ¶ 65. But Acuity suspects that he has not been living up to his agreement. Smitreski, it says, stole customer information, took it to a competitor, and now helps that competitor poach Acuity's customers. *Id.* ¶¶ 69, 72–77. So Acuity sued Smitreski and his new employer, Diversified NJ, Inc., for several business torts. *Id.* ¶¶ 90–136.

Now Diversified moves to dismiss two of the claims against it: tortious interference with business and attorneys' fees. D.I. 14. I dismiss both. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

*First,* Acuity says Diversified has tortiously interfered with its business relationships by encouraging Smitreski to solicit Acuity's customers. Compl. ¶¶ 84, 129–33.

But to show tortious interference, Acuity must point to at least one "lost business opportunit[y]." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 358 (D.N.J. 2019). It does not.

True, Acuity identifies two clients that Diversified tried to poach. Compl. ¶ 77. But it does not say that Diversified succeeded. To the contrary, Acuity's complaint hints that those clients remain its customers. *See id.* ¶ 75 n.4 (explaining how it redacted its customers' names to "maintain confidentiality"). And Acuity does not point to any other lost business. So its tortious interference claim is not plausible.

*Second,* Acuity says Diversified should pay its attorneys' fees. *Id.* ¶¶ 134–36. This, it says, is allowed by a Georgia statute that shifts fees "where the defendant has acted in bad faith." Ga. Code Ann. § 13-6-11. Georgia law applies here, it claims, because its agreement with Smitreski is governed by Georgia law. D.I. 1-1, exh. C, § 8. And by extension that law applies to Diversified because it knew about the choice-of-law provision in the noncompete agreement and chose to interfere anyway. D.I. 33, at 16.

But as Diversified points out, that agreement is between Acuity and Smitreski alone. D.I. 15, at 5. Diversified has not consented to Georgia law, so the choice-of-law provision cannot apply to it. *See TD Bank U.S. N.A. v. Hughes*, 2015 WL 3511980, at *1 (N.J. Super. Ct. App. Div. June 5, 2015).

Plus, it makes little sense to apply Georgia law to Diversified: though Acuity is headquartered in Georgia, Diversified has no contacts with that state and works out of New Jersey. *See* D.I. 1 ¶ 13; Compl. 1-1 ¶¶ 6, 12–13; D.I. 15, at 4 n.4, 5; D.I. 34, at 4. Indeed, Acuity agrees that New Jersey law governs its other claims against

Diversified. D.I. 33, at 7 n.2. And it cites no case explaining how Georgia law could apply here. *See generally id.* So I should not apply Georgia law. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981) (state must have "significant contact … with the parties and the occurrence or transaction" for its law to apply).

Pushing back, Acuity suggests it might add a Georgia trade-secrets claim against Diversified. D.I. 33, at 16–17. If so, Diversified would be "subject … to Georgia law." *Id.* at 17. Fair. But Acuity has not pleaded a Georgia trade-secrets claim yet. So we need not cross that bridge now.

\* \* \* \* \*

Acuity does not identify lost clients, so I dismiss its tortious-interference-with-business claim against Diversified. And because it fails to persuade me that Georgia attorneys' fees law should apply, I dismiss that claim too.

4